Steven CLEVELAND, Appellant,

v.

STATE of Alaska, Appellee.

No. A–9054.

Court of Appeals of Alaska.

Aug. 25, 2006.

---

Robert D. Lewis, Lewis & Thomas, Nome, for the Appellant.

Timothy W. Terrell, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and David W. Márquez, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

MANNHEIMER, Judge.

During the weekend of November 17–19, 2000, Steven Cleveland forcibly sexually penetrated his female cousin through her rectum with an object that was some four to six inches in diameter. In doing so, Cleveland inflicted serious and lasting internal injuries on his cousin. For this conduct, Cleveland was convicted of both second-degree sexual assault and second-degree assault.[1] Cleveland was also convicted of one other felony: manufacturing alcoholic beverages without a license in a community that had voted to ban alcoholic beverages.[2] We affirmed Cleveland's three felony convictions and his 19–

year composite term of imprisonment in *Cleveland v. State,* 91 P.3d 965 (Alaska App. 2004).

Three months after we affirmed Cleveland's convictions, Cleveland filed a motion in the superior court under Alaska Criminal Rule 35(a), claiming that his sentence was illegal. In his motion, Cleveland argued that he had been sentenced in violation of his right to a jury trial under the Sixth and Fourteenth Amendments to the United States Constitution, as interpreted by the United States Supreme Court in *Apprendi v. New Jersey* and *Blakely v. Washington.*[3] *See also United States v. Booker.*[4] As we explain in more detail below, Cleveland's motion was based on the fact that his case was governed by presumptive sentencing. Cleveland asserted that the sentencing judge improperly increased his presumptive terms of imprisonment based on aggravating factors that should have been (but were not) presented to a jury.

The superior court denied Cleveland's motion, and Cleveland now appeals the superior court's decision. We conclude that Cleveland's sentencing procedures did not violate the right to jury trial as interpreted in *Blakely.* Our reasoning has two steps.

First, as we explain here, the superior court relied on seven aggravating factors listed in AS 12.55.155(c) when the court sentenced Cleveland. Of these seven aggravators, three were based on Cleveland's prior criminal convictions: (c)(7)—that Cleveland had a prior conviction for a felony that was of a more serious class than his current felonies; (c)(8)—that Cleveland had a history of repeated assaultive behavior; and (c)(18)(B)—that Cleveland had committed a prior sexual assault on another victim. Under *Blakely,* aggravating factors based on a defendant's prior criminal convictions need not be presented to a jury. Moreover, another two aggravators—(c)(1) (infliction of physical injury) and (c)(5) (particularly vul-

---

1. AS 11.41.420(a)(3)(B) and AS 11.41.210(a)(2), respectively.

2. AS 04.11.010 and AS 04.16.200(b).

3. *Apprendi,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); *Blakely,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

4. 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).

nerable victim)—flowed directly from the jury's verdicts at Cleveland's trial. Thus, even after *Blakely*, the superior court could properly rely on these aggravators.

Second, under the pre–2005 version of AS 12.55.155(a), any one of these five aggravating factors, standing alone, was sufficient to empower the superior court to exceed the applicable presumptive term and sentence Cleveland to any term of imprisonment up to the maximum provided by law for his offenses. Once the judge found any one of these *Blakely*-compliant aggravators, the presence or absence of the other aggravators did not affect the judge's sentencing authority under Alaska's presumptive sentencing law.

In sum, the superior court had the authority to impose Cleveland's sentences without submitting any further factual issues to a jury. For this reason, the court correctly denied Cleveland's Rule 35(a) motion.

*A more detailed look at Cleveland's sentencing*

Because Cleveland had been convicted of two felonies before he committed the crimes in this case, he faced sentencing as a third felony offender under Alaska's presumptive sentencing law. And because Cleveland was a third felony offender, he faced presumptive terms for each of his three offenses in this case. Under the pre–2005 version of Alaska's presumptive sentencing law (or, more precisely, under the version of the presumptive sentencing law that was in effect until March 22, 2005),[5] Cleveland was subject to a 6–year presumptive term of imprisonment for the offense of second-degree sexual assault, another 6–year presumptive term of imprisonment for the offense of second-degree assault, and a 3–year presumptive term for the alcohol violation.[6]

At Cleveland's sentencing hearing, the State proposed eight aggravating factors under AS 12.55.155(c): (c)(1)—that Cleveland's victim sustained physical injury; (c)(2)—that

Cleveland demonstrated deliberate cruelty to the victim; (c)(4)—that Cleveland used a dangerous instrument in furtherance of the offense; (c)(5)—that Cleveland knew that his victim was particularly vulnerable; (c)(7)—that one of Cleveland's prior felonies was of a more serious class of offense than his present crimes; (c)(8)—that Cleveland's criminal history included aggravated or repeated instances of assaultive conduct; (c)(10)—that Cleveland's conduct in committing the physical assault was among the most serious within the definition of that offense, because Cleveland's conduct actually amounted to first-degree assault; and (c)(18)(B)—that Cleveland had committed another sexual assault involving another victim.

Cleveland conceded five of these factors: (c)(1), (c)(5), (c)(7), (c)(8), and (c)(18)(B). Superior Court Judge Richard H. Erlich concluded that the State had failed to prove proposed aggravator (c)(2), but he found that the State had proved the remaining two aggravators: (c)(4)—use of a dangerous instrument, and (c)(10)—conduct among the most serious within the definition of the offense.[7]

Based on these seven aggravators, Judge Erlich sentenced Cleveland to serve 10 years (the maximum term of imprisonment) for second-degree sexual assault and another 10 years (again, the maximum term of imprisonment) for second-degree assault. Judge Erlich also sentenced Cleveland to serve 5 years (again, the maximum term of imprisonment) for the alcohol violation. However, Judge Erlich made these sentences partially concurrent, so that Cleveland's composite term of imprisonment was 19 years rather than 25 years.[8]

*The United States Supreme Court's decisions in Apprendi v. New Jersey, Blakely v. Washington, and United States v. Booker*

In *Apprendi v. New Jersey*, the United States Supreme Court held that when the maximum sentence for a defendant's crime

---

**5.** In SLA 2005, ch. 2 (effective March 23, 2005), the Alaska legislature extensively revised our state's presumptive sentencing law in an effort to make it comply with *Blakely*.

**6.** *Cleveland*, 91 P.3d at 981–82.

**7.** *Id.* at 982.

**8.** *Id.*

hinges on an issue of fact other than the defendant's prior criminal convictions, that issue of fact must be presented to, and decided by, a jury.[9] In *Blakely v. Washington* and *United States v. Booker,* the Supreme Court extended this principle to the issues of fact that determine a defendant's maximum sentence under a presumptive sentencing or other "determinate" sentencing scheme.[10]

The problem presented in *Blakely* was that Washington law provided a technical "maximum" sentence for Blakely's crime, but Blakely's sentencing judge had no authority to impose that maximum sentence unless the judge found certain aggravating factors. The United States Supreme Court held that Blakely's true maximum sentence (for Sixth Amendment purposes) was the lesser sentence that represented the ceiling on the judge's sentencing authority in the absence of aggravating factors.[11]

In several recent decisions, this Court has acknowledged that Alaska's pre–2005 presumptive sentencing law violated the right to jury trial announced in *Blakely.* Here, for instance, is what we said about this issue in *Milligrock v. State,* 118 P.3d 11 (Alaska App. 2005):

Alaska's pre–2005 presumptive sentencing laws are directly affected by the *Blakely* decision—because, under those laws, if a felony defendant was subject to a presumptive term of imprisonment, the superior court had no authority to increase that term of imprisonment (even by the addition of suspended imprisonment) unless the State proved one or more of the aggravating factors listed in AS 12.55.155(c), or unless the State proved extraordinary circumstances as defined in AS 12.55.165.

. . .

Under Alaska's pre–2005 presumptive sentencing law, proof of aggravating factors (or proof of extraordinary circumstances) expanded the range of sentences available to the superior court (to the de-

fendant's detriment). *Blakely* holds that, under such a sentencing scheme, a defendant has the right to a jury trial on these factors (with the exception of prior convictions). But under Alaska's pre–2005 presumptive sentencing laws, all rulings on aggravating and mitigating factors, and all rulings on extraordinary circumstances (whether favoring the government or the defendant), were made by the sentencing judge. Thus, Alaska's pre–2005 presumptive sentencing laws provided for sentencing procedures that violated the Sixth Amendment as interpreted in *Blakely.*

*Milligrock,* 118 P.3d at 14–15.[12]

Nevertheless, as we explain in the next section of this opinion, there was no *Blakely* problem with respect to five of the seven aggravators that Judge Erlich relied on when he sentenced Cleveland.

*Three of the aggravating factors that Judge Erlich relied on at Cleveland's sentencing fall within the Blakely exception for prior criminal convictions, and two more of the aggravators necessarily follow from the jury's verdicts*

■ Aggravator (c)(7) was one of the aggravating factors that Judge Erlich relied on in Cleveland's case. This aggravator applies when the defendant has a prior conviction for a felony of a more serious class than the defendant's current offenses. In *Milligrock,* we held that, because of the *Blakely* exception for prior convictions, a defendant has no right to a jury trial on aggravating factor (c)(7). *Milligrock,* 118 P.3d at 16. Thus, there was no *Blakely* error with respect to aggravator (c)(7).

■ In addition, *Milligrock* holds that there is no *Blakely* problem with aggravator (c)(8)—the aggravator that applies when a defendant's criminal history includes aggravated or repeated instances of assaultive conduct—if the State's proof of this aggravating factor rests on the defendant's prior convic-

---

9. *Apprendi,* 530 U.S. at 490, 120 S.Ct. at 2362–63.

10. *Blakely,* 542 U.S. at 301–04, 124 S.Ct. at 2536–37.

11. *Id.,* 542 U.S. at 303–04, 124 S.Ct. at 2537.

12. *See also Moore v. State,* 123 P.3d 1081, 1091 (Alaska App.2005); *Haag v. State,* 117 P.3d 775, 782–83 (Alaska App.2005).

tions, rather than on unprosecuted (or unsuccessfully prosecuted) acts of assault. *Id.* at 16.

In Cleveland's case, the State's proof of aggravator (c)(8) was based on Cleveland's prior criminal convictions. As we noted in our decision of Cleveland's direct appeal, Cleveland was convicted of second-degree assault in 1980 for attacking someone with a screwdriver, and he also had several misdemeanor assault convictions.[13] For this reason, Judge Erlich could properly find aggravator (c)(8) without submitting the matter to a jury.

■ In addition, the analysis that we adopted in *Milligrock* means that there is no *Blakely* problem with respect to aggravating factor (c)(18)(B)—the aggravator that applies if the defendant has previously committed another sexual assault—so long as the State's proof of this aggravator is based on a prior criminal conviction. It is true that *Milligrock* did not address aggravator (c)(18)(B) directly. But *Milligrock's* discussion of how the *Blakely* exception for prior convictions applies to aggravator (c)(8) is equally applicable to aggravator (c)(18)(B).

In Cleveland's case, the State's proof of aggravator (c)(18)(B) was based on Cleveland's prior conviction for sexual assault. As we noted in Cleveland's prior appeal, Cleveland was convicted of first-degree sexual assault in 1985 for raping his sister-in-law.[14] Thus, there was no *Blakely* error with respect to aggravator (c)(18)(B).

■ Moreover, there was no *Blakely* error with respect to aggravating factor (c)(1)—that, during the commission of the offense, the defendant directly inflicted physical injury—because this aggravator necessarily followed from the jury's verdict finding Cleveland guilty of second-degree assault.

The jury found Cleveland guilty of both second-degree sexual assault and second-degree assault based on the same incident.

Because Cleveland was convicted of second-degree assault under subsection (a)(2) of AS 11.41.210, which requires proof that the defendant caused serious physical injury, the jury necessarily found that the victim of Cleveland's assault sustained physical injury during the sexual assault. Accordingly, there was no *Blakely* error when Judge Erlich relied on aggravator (c)(1) when sentencing Cleveland for second-degree sexual assault.[15]

(The superior court apparently recognized that aggravator (c)(1) applied only to Cleveland's conviction for second-degree sexual assault, and not to Cleveland's conviction for second-degree *physical* assault. Under AS 12.55.155(e), this aggravator did not apply to Cleveland's conviction for second-degree physical assault because infliction of physical injury was an essential element of that offense.)

■ We acknowledge that Judge Erlich's reliance on aggravator (c)(1) when sentencing Cleveland for second-degree sexual assault apparently violated the rule that we announced in *Juneby v. State,* 641 P.2d 823, 842–43 (Alaska App.1982)—the rule that a sentencing court should not rely on an aggravating factor that is based on conduct for which the defendant is being separately sentenced. However, Cleveland has not raised this issue; he is attacking his sentence solely on *Blakely* grounds. Even though Judge Erlich may have violated the *Juneby* rule, the judge's action did not violate Cleveland's right to jury trial under *Blakely.*

■ For similar reasons, there was no *Blakely* error with respect to aggravating factor (c)(5)—particularly vulnerable victim—because this aggravator necessarily followed from the jury's verdict finding Cleveland guilty of second-degree sexual assault.

The State charged Cleveland with second-degree sexual assault under AS 11.41.420(a)(3)(B); that is, the State alleged that Cleveland engaged in sexual penetration

---

**13.** *Cleveland,* 91 P.3d at 981.

**14.** *Id.*

**15.** *See Woods v. State,* 667 P.2d 184, 187–88 (Alaska 1983) (holding that, because physical in-

jury to the victim is not a necessary element of first-degree sexual assault, a judge can properly consider aggravator (c)(1) when sentencing a defendant for this crime).

with the victim when he knew that she was incapacitated. (The term "incapacitated" is defined in AS 11.41.470(2) as meaning "temporarily incapable of appraising the nature of one's own conduct or physically unable to express unwillingness to act".) Thus, when the jury convicted Cleveland of this crime, the jury necessarily found that Cleveland knew that his victim was incapacitated.

To prove aggravator (c)(5), the State had to establish that Cleveland "knew or reasonably should have known that the victim of [his] offense was ... for any ... reason substantially incapable of exercising normal physical or mental powers of resistance". Because the jury found that Cleveland knew that his victim was incapacitated (as that term is defined in AS 11.41.470(2)), it necessarily follows that Cleveland knew that his victim was "substantially incapable of exercising normal physical or mental powers of resistance".

In other words, because Cleveland's convictions for second-degree sexual assault and second-degree assault were based on the same incident, and because the second-degree sexual assault charge required proof that Cleveland knew that his victim was incapacitated, the jury's verdict necessarily entails a finding of aggravator (c)(5)—a finding that Cleveland knew that his victim was substantially incapable of exercising normal powers of resistance. Accordingly, there was no *Blakely* error when Judge Erlich relied on aggravator (c)(5).

(Again, as was the case with aggravator (c)(1), the superior court apparently recognized that aggravator (c)(5) applied to only one of Cleveland's convictions—in this instance, his conviction for second-degree *physical* assault. Under AS 12.55.155(e), this aggravator did not apply to Cleveland's conviction for second-degree *sexual* assault because the victim's incapacity was an essential element of that offense.)

In sum, three of the seven aggravating factors that Judge Erlich relied on when sentencing Cleveland fall within the *Blakely* exception for prior convictions, and two more of the aggravators are based directly on the jury's verdicts.

*Given the proof of at least one Blakely-compliant aggravating factor, the presence or absence of other aggravating factors is irrelevant for Blakely purposes under Alaska's pre-2005 presumptive sentencing law*

We have just explained why five of the seven aggravators that Judge Erlich relied on when he sentenced Cleveland pose no problem under *Blakely*. The question that remains is whether Cleveland's sentence must nevertheless be invalidated because the remaining two aggravating factors—(c)(4) and (c)(10)—arguably rest on disputed issues of fact that are not resolved by the jury's verdicts.

We say "arguably" because, under the facts of Cleveland's case, we believe that a reasonable argument could be made to the contrary; that is, one might possibly conclude that the *facts* underlying these two aggravators—use of a dangerous instrument, and conduct among the most serious within the definition of the offense—flow directly from the jury's verdicts, and that any remaining issues relating to these aggravators are issues of law.[16] But in the discussion that follows, we will assume that aggravators (c)(4) and (c)(10) rest on disputed issues of fact that were not resolved by the jury's verdicts.

*Blakely* holds that when, under a state's sentencing laws, the upper limit of a judge's sentencing authority for a particular crime hinges on the proof of facts aside from the defendant's prior convictions, the Sixth Amendment forbids the judge from relying on any fact that has been neither (a) tried to a jury nor (b) expressly admitted by the defendant.

> [T]he "statutory maximum" [sentence] for [Sixth Amendment] purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.* ... In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding

16. *See Michael v. State,* 115 P.3d 517, 519–520 (Alaska 2005).

additional facts, but the maximum he may impose *without* any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, . . . the judge exceeds his proper authority.

*Blakely,* 542 U.S. at 303–04, 124 S.Ct. at 2537 (emphasis in the original).

The specific problem presented in the *Blakely* case itself was that, even though Washington law provided a technical "maximum" sentence for Blakely's crime, Blakely's sentencing judge had no authority to impose that maximum sentence unless the judge found aggravating factors—facts relating to the defendant's conduct or mental state, the defendant's criminal history, and other circumstances surrounding the crime. Because, as a practical matter, Blakely's potential maximum sentence hinged on the presence or absence of these additional aggravating facts, the United States Supreme Court held that Blakely had a Sixth Amendment right to have a jury decide these issues of fact. And, because Washington law did not give Blakely a right to a jury trial on these issues, the Supreme Court held that Blakely's true maximum sentence (for Sixth Amendment purposes) was the lesser sentence that represented the ceiling on the judge's sentencing authority in the absence of the aggravating factors.

As we explained earlier in this opinion, Alaska's pre–2005 presumptive sentencing law suffered from the same constitutional flaw as the Washington sentencing law at issue in *Blakely*.[17] Under our pre–2005 law, when a defendant was subject to presumptive sentencing, the sentencing judge could not exceed the prescribed presumptive term of imprisonment unless the State proved one or more of the aggravating factors listed in AS 12.55.155(c), or unless the State proved "extraordinary circumstances" as defined in AS 12.55.165. All rulings on aggravating factors and extraordinary circumstances were made by the sentencing judge, not by a jury, and the applicable standard of proof was "clear and convincing evidence", not "beyond a reasonable doubt". Thus, Alaska's pre–2005 presumptive sentencing law provided for sentencing procedures that violated the Sixth Amendment as interpreted in *Blakely*.

But although the prior sentencing laws of Washington and Alaska both violated the right to jury trial as interpreted in *Blakely,* there was a substantial difference in the structure of the two states' sentencing schemes.

Under Washington's sentencing laws, each aggravating factor required a separate adjustment to the defendant's sentence (or range of sentences). Thus, the presence or absence of each and every disputed aggravating factor altered the judge's sentencing authority. But under Alaska's pre–2005 sentencing laws, the proof of any single aggravating factor gave the sentencing judge the authority to impose any term of imprisonment up to the statutory maximum. Proof of additional aggravating factors did not alter the range of sentences available to the judge—although these additional aggravators would obviously be important to the judge's choice of sentence within that sentencing range.

■ *Blakely* holds that a defendant is entitled to a jury trial on any disputed factual issue that will alter the maximum sentence to the defendant's detriment. Under Washington law, that was *every* aggravating factor— because, regardless of what other aggravating factors might be proved, each individual aggravating factor called for a separate adjustment of the defendant's sentencing range. But under pre–2005 Alaska law, the defendant's sentencing range did not depend on each separate aggravator. Rather, the crucial distinction was between (a) cases where no aggravators were proved, and (b) cases where at least one aggravator was proved.

Because of this, we conclude that, for cases governed by our state's former presumptive sentencing law (*i.e.,* the presumptive sentencing law that was in effect until March 22, 2005), the defendant's right to jury trial under *Blakely* is satisfied if there is at least one *Blakely*-compliant aggravating factor—*i.e.,* at least one aggravating factor that flows di-

---

**17.** *See, e.g., Moore v. State,* 123 P.3d 1081, 1091 (Alaska App.2005); *Milligrock v. State,* 118 P.3d 11, 14–15 (Alaska App.2005); *Haag v. State,* 117 P.3d 775, 782–83 (Alaska App.2005).

rectly from the jury's verdict, or is admitted by the defendant, or is based on the defendant's prior convictions.

### (a) The Washington sentencing laws that were at issue in Blakely

Under pre-*Blakely* Washington law,[18] every criminal offense was assigned a "seriousness level" from I (least serious) to XVI (aggravated murder).[19] Once the seriousness level of the defendant's crime was identified, the sentencing judge consulted a "sentencing grid"[20] to determine the range of permissible sentences. For each of the sixteen "seriousness levels", this sentencing grid provided ten potential sentencing ranges. To identify which sentencing range applied, the judge needed to determine the defendant's "offender score".

For example, the defendant in *Blakely* was convicted of second-degree kidnapping.[21] This offense has a "seriousness level" of V.[22] Here is the sentencing grid for a level V offense:[23]

Offender Score

| 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 or more |
|---|---|---|---|---|---|---|---|---|---|
| 9m | 13m | 15m | 18m | 2y-2m | 3y-2m | 4y | 5y | 6y | 7y |
| 6m-12m | 12+-14m | 13m-17m | 15m-20m | 22m-29m | 33m-43m | 41m-54m | 51m-68m | 62m-82m | 72m-96m |

(In this grid, the bottom two rows specify the minimum and maximum sentences of imprisonment—in months—for each "offender score"; the upper row is the mid-point of this range.)

To determine a defendant's "offender score", the sentencing judge consulted a statute—former RCW 9.94A.525—that laid out the rules for performing this calculation. The defendant received points based on the number of the defendant's prior convictions, the types of crime represented by those prior convictions, and certain other aggravating factors. If the facts of the defendant's record were in dispute, the sentencing judge resolved these issues of fact, applying a "preponderance of the evidence" standard of proof.[24]

Once the defendant's "offender score" was determined, the defendant was subject to the presumptive range of imprisonment specified in the sentencing grid. For example, in *Blakely*, the defendant's "offender score" was 2—meaning that Blakely faced a presumptive sentencing range of 13 to 17 months' imprisonment.[25]

However, another statute—former RCW 9.94A.533(3)—declared that the presumptive sentencing range specified in the sentencing grid was to be augmented by an additional amount of imprisonment if the defendant or an accomplice was armed with a firearm. In Blakely's case, this augmentation was 3 years (*i.e.*, 36 months).[26] This firearm augmentation meant that Blakely faced a sentencing range of 49 to 53 months.

Moreover, yet another statute—former RCW 9.94A.535—authorized sentencing judges to depart from the prescribed sentencing range if the judge concluded that there were "substantial and compelling reasons justifying an exceptional sentence".

18. Revised Code of Washington, Chapter 9.94A—the Sentencing Reform Act of 1981.

19. *See* RCW 9.94A.515, Table 2 (listing the crimes included within each "seriousness level").

20. *See* RCW 9.94A.510, Table 1.

21. *Blakely*, 542 U.S. at 298–99, 124 S.Ct. at 2534–35.

22. *See* RCW 9.94A.515, Table 2.

23. *See* RCW 9.94A.510, Table 1.

24. Former RCW 9.94A.530(2) (the version in effect at the time of Blakely's case). The pertinent part of this statute read: "Where the defendant disputes material facts, the court must either not consider the fact or grant an evidentiary hearing on the point. The facts shall be deemed proved at the hearing by a preponderance of the evidence."

25. *Blakely*, 542 U.S. at 299, 124 S.Ct. at 2535.

26. *Id.;* former RCW 9.94A.533(3)(b).

That is what happened in Blakely's case. As explained by the United States Supreme Court, after the sentencing judge heard Blakely's wife describe the kidnapping, "the judge rejected the State's recommendation and imposed an exceptional sentence of 90 months"—in other words, a sentence that exceeded the otherwise prescribed maximum sentence by 37 months.[27]

### (b) Alaska's pre-2005 sentencing laws

Alaska's pre-2005 sentencing statutes established a series of presumptive terms of imprisonment for second and third felony offenders convicted of a class B or class C felony[28] and for all offenders convicted of a class A felony or convicted of the unclassified felonies of first-degree sexual assault or first-degree sexual abuse of a minor.[29] In the absence of aggravating and mitigating factors, the sentencing judge was obliged to impose the prescribed presumptive term, without any adjustment.[30]

Former AS 12.55.155(a) declared that if a defendant was subject to presumptive sentencing, the judge could "increase the [prescribed] presumptive term up to the maximum term of imprisonment [for that offense] for factors in aggravation". But proof of even a single aggravating factor was sufficient to empower the superior court to exceed the applicable presumptive term and impose any term of imprisonment up to the maximum provided by law for the offense.[31]

Thus, Alaska took an "all or nothing" approach to aggravating factors. If no aggravating factors were proved, the judge was obliged to impose the presumptive term. If only mitigating factors were proved, the presumptive term became the ceiling on the judge's sentencing authority. But if one or more aggravating factors were proved, the sentencing judge was empowered to impose any sentence up to the maximum prescribed for that offense.

### (c) The effect of Blakely on the proof of aggravating factors under Alaska's pre-2005 sentencing scheme

The basic principle underlying the Supreme Court's decisions in *Apprendi v. New Jersey* and *Blakely v. Washington* is that the Sixth Amendment forbids a legislature from enacting a "scheme that removes the jury from the determination of a fact that, if found, exposes [a] criminal defendant to a penalty exceeding the maximum he [might] receive if punished according to the facts reflected in the jury verdict alone".[32]

This principle limits the states' ability to fashion *determinate* sentencing schemes, but it does not alter the states' ability to fashion *indeterminate* sentencing schemes—*i.e.*, sentencing schemes in which the judge has the discretion to impose any term of imprisonment within a specified range of sentences. As this Court explained in *Carlson v. State*, 128 P.3d 197, 207 (Alaska App.2006), "a sentencing judge does not violate the Sixth Amendment [as interpreted in *Blakely*] when the judge engages in fact-finding when choosing a sentence within [a] specified range".

*Blakely* does not regulate or restrict a sentencing judge's traditional consideration of the many factors that potentially affect the selection of a case-appropriate sentence within the applicable statutory bounds. Rather, *Blakely* addresses a defendant's right to a jury trial on the factual issues that establish those applicable sentencing bounds.

---

27. *Blakely*, 542 U.S. at 300, 124 S.Ct. at 2535.

28. Former AS 12.55.125(d) and (e) (pre-2005 versions).

29. Former AS 12.55.125(c) and 125(i) (pre-2005 versions).

30. *Milligrock v. State*, 118 P.3d 11, 14 (Alaska App.2005). Each pertinent subsection of former AS 12.55.125 (pre-2005 version) declared that a defendant convicted of that particular class of felony offense *"shall be sentenced to the following*

presumptive terms, subject to adjustment as provided in AS 12.55.155—12.55.175" (emphasis added)—that is, subject to adjustment for the aggravating and mitigating factors listed in AS 12.55.155(c)-(d), or for extraordinary circumstances as defined in AS 12.55.165.

31. *Reyes v. State*, 978 P.2d 635, 641–42 (Alaska App.1999).

32. *Apprendi*, 530 U.S. at 482–83, 120 S.Ct. at 2359; see also *Blakely*, 542 U.S. at 301, 124 S.Ct. at 2536.

Here is how Justice Scalia, writing in *Blakely*, explained this distinction:

> Indeterminate sentencing ... increases judicial discretion, ... but not at the expense of the jury's traditional function of finding the facts essential· to lawful imposition of the penalty.... [I]ndeterminate [sentencing] schemes involve judicial factfinding, in that a judge ... may implicitly rule on those facts he deems important to the exercise of his sentencing discretion. But [these] facts do not pertain to whether the defendant has a legal *right* to a lesser sentence—and that makes all the difference [on the issue of] judicial impingement upon the traditional role of the jury.... In a system that says the judge may punish burglary with [a sentence of] 10 to 40 years, every burglar knows he is risking 40 years in jail. [But in] a system that punishes burglary with a 10–year sentence, with another 30 added for use of a gun, the burglar who enters a home unarmed is *entitled* to no more than a 10–year sentence—and by reason of the Sixth Amendment[,] the facts [that authorize any higher sentence] must be found by a jury.

*Blakely*, 542 U.S. at 309, 124 S.Ct. at 2540 (emphasis in the original).[33]

Thus, *Blakely* limits the types of determinate sentencing that states may adopt: if the maximum term of imprisonment within a sentencing judge's authority hinges on a question of fact (other than the defendant's prior convictions), the defendant is entitled to have a jury decide that question of fact (and is also entitled to demand that the government prove this fact beyond a reasonable doubt). But *Blakely* does not affect judicial fact-finding within an indeterminate sentencing scheme.

Alaska's pre–2005 sentencing laws were a hybrid of determinate· and indeterminate sentencing.

When no aggravating or mitigating factors were proved, the law declared that the defendant should receive a specific penalty: the prescribed presumptive term. And if one or more mitigating factors were proved, but no aggravating factors, this presumptive term became the effective ceiling on the judge's sentencing authority (with the judge authorized to impose a lesser sentence).

But if at least one aggravating factor was proved, there was no longer a constraint on the defendant's maximum sentence. Upon proof of any aggravator, the judge had the authority to impose any term of imprisonment up to the maximum punishment prescribed for that offense. At that point, Alaska sentencing became indeterminate with regard to the defendant's maximum sentence.

As we noted in *Simon v. State*, 121 P.3d 815, 820 (Alaska App.2005), several states with analogous presumptive sentencing schemes have held that, once at least one aggravating factor has been proved in conformity with *Blakely* (thus establishing the sentencing judge's authority to impose a sentence within a higher range), *Blakely* is satisfied and any further fact-finding can be done by the sentencing judge. *See State v. Martinez*, 210 Ariz. 578, 115 P.3d 618, 625–26 (2005); *Lopez v. People*, 113 P.3d 713, 731 (2005); *Teeters v. State*, 817 N.E.2d 275, 279 (Ind.App.2004).

The Arizona Supreme Court's decision in *State v. Martinez* is particularly instructive.

In Arizona, under the sentencing statutes in force at the time of Martínez's sentencing, the proof of a single aggravating factor authorized the sentencing judge to exceed the applicable presumptive sentence for a given offense.[34] In *Martinez*, the sentencing judge found eight aggravating factors using a preponderance of the evidence standard—an apparent multiple violation of *Blakely*.

But the Arizona Supreme Court concluded that at least one of these aggravating factors was *Blakely*-compliant—because it was implicit in the jury's verdict. And because, under Arizona law, the existence of this one

---

**33.** See also *Harris v. United States*, 536 U.S. 545, 565, 122 S.Ct. 2406, 2418, 153 L.Ed.2d 524 (2002), where the Supreme Court declared that "[sentencing judges] may impose the minimum, the maximum, or any other sentence within the range [authorized by the juries' verdicts] without seeking further authorization from those juries— and without contradicting *Apprendi*."

**34.** Arizona Revised Statutes § 13–702.

*Blakely*-compliant aggravator authorized the sentencing judge to impose any term of imprisonment up to the statutory maximum for Martínez's crimes, the Arizona Supreme Court concluded that *Blakely* did not limit the sentencing judge's consideration of the other aggravating factors when deciding what sentence to impose within this sentencing range.[35] The court explained:

> The Sixth Amendment requires that a jury find beyond a reasonable doubt, or a defendant admit, any fact (other than a prior conviction) necessary to establish the range within which a judge may sentence the defendant. If, however, additional facts are relevant merely to the exercise of a judge's discretion in determining the specific sentence to impose on a defendant *within* a given statutory sentencing range, the Sixth Amendment permits the judge to find those facts by a preponderance of the evidence.

*Martinez,* 115 P.3d at 625 (emphasis in the original).

Alaska's pre–2005 sentencing laws were written according to the same pattern as the Arizona laws at issue in *Martinez,* and we conclude that the result reached by the Arizona Supreme Court is also the correct result under Alaska's pre–2005 sentencing laws.

Under our pre–2005 sentencing laws, the proof of a single aggravating factor changed the defendant's sentencing range, and this change in the judge's sentencing authority was exactly the same regardless of the number of aggravating factors proved. Under such a sentencing scheme, *Blakely* governed the proof of the aggravating factor that altered the sentencing judge's authority. But once one or more *Blakely*-compliant aggravating factors were proved, the sentencing judge was empowered to impose any sentence up to the statutory maximum. At that point, the existence of other aggravating factors might well influence the judge's selection of a particular sentence within this authorized range—but *Blakely* does not affect this type of judicial fact-finding.

**35.** *Martinez,* 115 P.3d at 625–26.

*Conclusion*

In Cleveland's case, the sentencing judge found seven aggravating factors. At least five of these aggravators were *Blakely*-compliant. Because of this, it does not matter whether the remaining two aggravators were *Blakely*-compliant. The judge's sentencing authority remained the same.

For these reasons, we conclude that the superior court correctly denied Cleveland's motion for correction of sentence under Criminal Rule 35(a). The judgement of the superior court is AFFIRMED.